# **Exhibit 8**

```
 1        Dreste - Direct - Mr. Brickman
 2    said, I asked her first did she ever
 3    respond to this email.
 4        THE CHAIRMAN:  I missed that.  My
 5    apologies.
 6   A.    I did not.
 7   Q.    Do you know whether Ms. Rosado
 8   ever responded to this email?
 9   A.    I don't know.
10   Q.    Did you instruct her to respond
11   to this email when she showed it to you?
12   A.    I don't remember.
13   Q.    And just so we're clear, you were
14   aware at least this time, looking at the
15   third line, that he had accused BGC of
16   false accounting, correct?
17   A.    He had accused BGC of false
18   accounting.
19   Q.    And if you look at the second
20   paragraph, one, two, four lines up, he
21   called it "accounting fraud."  You see
22   that?
23   A.    Yes.
24   Q.    Now at or about the time this
25   happened -- well, let's go back.
```



```
 1        Dreste - Direct - Mr. Brickman
 2           On February 23rd, it's correct,
 3   is it not, Ms. Dreste, that you handed
 4   Simon a copy of the written warning and
 5   asked him to sign it, correct?
 6   A.     At the time, yes, and then we
 7   discussed it and in an attempt to move
 8   forward we withdrew the written warning.
 9   Q.     Now at or about this time,
10   February 22nd, 23rd, Mr. Andriesz was
11   complaining that these acts constituted
12   retaliation, the administrative leave
13   and the oral and written warning,
14   correct?
15   A.     Yes, he was.
16   Q.     And at or about this time you had
17   a discussion with him, did you not, in
18   which Mr. Andriesz told you that the
19   retaliation had to stop, correct?
20   A.     Yes.
21   Q.     And at that point in time he also
22   told you that if it didn't stop, he
23   would go to the SEC, and he explained to
24   you that he knew how to go to the SEC,
25   correct?
```



```
                 Dreste - Direct - Mr. Brickman
 1
 2     A.    I don't remember that.
 3     Q.    Are you aware that Mr. Andriesz
 4   had his lawyer write a whistleblower
 5   complaint letter to Mr. Popok,
 6   P-O-P-O-K?
 7     A.    No.
 8     Q.    You were never aware of that
 9   letter?
10     A.    I don't recall that specifically,
11   sir.
12     Q.    Do you recall it generally?
13     A.    No.
14     Q.    Do you know who a person named
15   Reece Brown is?
16     A.    I do not.
17     Q.    Do you know Eaton Brown
18   consultancy.com is?
19     A.    I do not.
20           MR. BRICKMAN: Looking if we
21     could at Exhibit 251.  And this is
22     the transmittal of a May 9, 2016
23     whistleblower complaint by Simon
24     Andriesz from his attorney to
25     Mr. Popok.  You can scroll down.
```



```
 1        Dreste - Direct - Mr. Brickman
 2    Q.    Does this refresh your
 3  recollection as to whether or not you
 4  had ever seen this?
 5    A.    I don't recall this, to be honest
 6  with you, sir.
 7    Q.    Did Mr. Popok ever contact you
 8  with respect to a whistleblower
 9  complaint by Simon Andriesz?
10    A.    Perhaps.  I just don't
11  specifically remember this.
12    Q.    Do you know if Mr. Popok ever
13  asked you to investigate any of the
14  allegations that Mr. Andriesz' attorney
15  was making?
16    A.    I don't know.  I was not -- I
17  don't remember this.
18    Q.    I want to, I want to bring your
19  attention to.
20          Are you aware of whether or not
21  Mr. Andriesz ever received a
22  whistleblower award from the CFTC?
23    A.    I do not know.  I am not aware.
24    Q.    I want to bring your attention --
25  I'm jumping way ahead to the 2016
```



```
ARBITRATION  Vol. X Confidential                February 08, 2024
Andriesz v BGC Finanial                                        167
```

1      Dreste - Direct - Mr. Brickman
2    A F T E R N O O N   S E S S I O N
3         (1:33 P.M.)
4         THE CHAIRMAN:  Thank you very
5    much.
6         Ms. Dreste, are you ready to
7    resume?
8         THE WITNESS:  Yes, sir.
9         THE CHAIRMAN:  Mr. Brickman, the
10   witness is yours.
11        MR. BRICKMAN:  You're all going
12   to regret giving me a break because
13   I'm not sure I've been able to
14   condense it, but let me try.
15        PATRICIA DRESTE, resumed, having
16   been previously duly sworn, was
17   examined and testified further, as
18   follows:
19        DIRECT EXAMINATION
20        BY MR. BRICKMAN (CONTINUED):
21   Q.   Ms. Dreste, do you know whether
22   or not when Mr. Pauta was at Littler, he
23   represented school boards and school
24   districts?
25   A.   I have no idea.



```
 1         Dreste - Direct - Mr. Brickman
 2     Q.    Did you ask Mr. Pauta the
 3   circumstances under which he met or
 4   worked with Dr. Solomon?
 5         MS. CARDENAS:  Objection.
 6         Ms. Dreste, you can answer yes or
 7    no.
 8     A.    No.
 9     Q.    There came a time, did there not,
10   Ms. Dreste, when Mr. Andriesz told you
11   that if Mr. Aubin was allowed to
12   continue his management style, that
13   someone was going to die?  Do you recall
14   that conversation?
15     A.    Yes, sir.
16     Q.    And subsequent to him telling you
17   that, it's a fact, is it not, that at
18   least two people under Mr. Aubin's
19   supervision committed suicide; is that
20   correct?
21     A.    I did not know that.
22     Q.    All right.  Just one question
23   about the October time frame of 2016.  I
24   had asked you earlier if in the February
25   time frame Mr. Andriesz had told you
```



```
 1       Dreste - Direct - Mr. Brickman
 2   that, if this continued, he was going to
 3   go to the SEC, and you testified you
 4   didn't recall that, correct?
 5   A.    Correct.
 6   Q.    In October of 2016, late October,
 7   early November of 2016, isn't it a fact
 8   that Mr. Aubin -- Mr. Andriesz told you
 9   that since what he viewed as the
10   harassment and retaliation had
11   continued, he was in fact going to go to
12   the SEC?
13   A.    I don't recall that.  He may have
14   threatened to go to the SEC.  I didn't
15   know if he did or not.
16   Q.    All right.
17         MR. BRICKMAN:  Turning if we
18     could to 349.  We're just trying to
19     get our technology back.  Now --
20         MS. CARDENAS:  It's still just
21     the list.
22         MR. BRICKMAN:  Okay, try again.
23     Now good?
24         MS. CARDENAS:  Yes, you're good.
25         MR. LEONARD:  Thank you.
```



```
ARBITRATION  Vol. X Confidential                    February 08, 2024
Andriesz v BGC Finanial                                           170
```

```
 1      Dreste - Direct - Mr. Brickman
 2   Q.    We had looked at 348 which was a
 3   December 7, 2016 email from Mr. Andriesz
 4   to you asking a number of questions and
 5   asking for your response.
 6         This is a letter you wrote to
 7   Mr. Andriesz, an email, I'm sorry, and
 8   overnight, of December 8th, correct?
 9   A.    Mm-hmm.
10   Q.    Did you have any help writing
11   this email?
12   A.    I worked with my employment
13   attorneys.
14   Q.    Your first sentence says, "I
15   write, in part, to respond to your
16   December 6, 2016 email to me."
17         You're referring, are you not, to
18   the December 7th email, correct?
19   A.    Sorry, would you repeat that.
20   Someone just distracted me.
21   Q.    It says "I write, in part, to
22   respond to your December 6, 2016 email
23   to me."  That's the first line.  But in
24   fact, Mr. Andriesz' email was December
25   7th, correct?
```



800.211.DEPO (3376)
EsquireSolutions.com