# **Exhibit 14**

# Exhibit 7

**THIS BROKER'S CONTRACT** is made the 28th day of May 2012

**BETWEEN:**

(1) **BGC BROKERS L.P.** a limited partnership registered in England with number LP011453 – for BGC Brokers L.P. whose registered office is at One Churchill Place, Canary Wharf, London E14 5RD (the "Employer")

(2) **SIMON ANDRIESZ** of 27 A Belsize Park Gardens, London, NW3 4JH ("You")

The parties agree that the terms of your employment are set out below (the "Contract") and in the attached terms and conditions (which are incorporated by reference, the "Terms & Conditions"), together referred to as this "Agreement".

1.  **Commencement of Employment**

(a) The provisions of this Agreement, as appropriate, will come into effect on the date hereof. Your employment under this Agreement will commence as soon as you are lawfully free and able to do so, but in any event no later than 1 December 2012 and, unless expressly advised to the contrary, shall run from the date on which you actually commence work with the Employer as determined by the Employer (the "Commencement Date"). You shall take all such lawful action (including resigning from your current employment and obtaining or reviewing any necessary work permit, as appropriate) as shall be necessary to enable you to comply with your obligations under this Agreement and commence your duties with the Employer at the earliest possible time. You agree and represent that you will not enter into or in any way amend or modify or permit the automatic renewal or extension of your employment agreement, if any, with your current employer, including extending the term of such employment or the duration of any post-employment restrictions contained in any such employment agreement. Your employment under this Agreement is conditional upon your having the necessary permit to work for the Employer in the United Kingdom and your obtaining and maintaining, as appropriate, all regulatory approvals that the Employer deems relevant to your position.

(b) Your employment is for an initial period of five (5) years from the Commencement Date, (the "Initial Period") subject to the other provisions of this Agreement. Thereafter (subject to the other provisions in this Agreement) it shall be extended automatically for successive periods of one (1) year (the "Renewal Period"), on the same terms and conditions as contained in this Agreement, from the end of the Initial Period or the end of any subsequent Renewal Period, as appropriate, unless otherwise agreed.

(c) Either party may give notice to the other in writing to terminate the Agreement, such notice to be given on any date within the last two (2) weeks of the final month of the Initial Period or a Renewal Period (as appropriate). The notice shall terminate your employment on the expiry of three (3) months (which period of notice the parties agree is reasonable) from the latest date notice could have been given pursuant to this sub-clause.

(d) No period of previous employment with a former employer will count as part of your continuous employment with the Employer.

2. **Job Title, Place and Hours of Work**   FINANCIAL

(a)  You will be employed as the Head of the Financial Futures and Options Desk (the "Desk") of the Employer or in such other capacity (of equivalent status, seniority and responsibility) as the Employer may reasonably require.

(b)  Your normal hours of work will be 7.15am to 5.30pm on Monday to Friday, subject to paragraph 2.2 of the Terms & Conditions.

(c)  You will be employed to work for the Employer (or on Secondment with an Associated Company) in the offices based in London or such other offices of the Employer or an Associated Company as it or they may reasonably require, subject always to your consent to any such transfer or secondment (such consent not to be unreasonably withheld).

3. **Commission Compensation**

(a) (i)  You will be paid a salary of £175,000 per annum ("Salary"). The Employer agrees to review the Salary annually during the Initial Period and before the commencement of each Renewal Period.

   (ii)  During employment the Desk will be required to generate a certain level of commission revenue and if 50% of the commission revenue generated by the Desk in any consecutive three month period is less than the Full Employment Costs (as defined below) attributable to the Desk over the same three month period, the Employer reserves the right to reduce your Salary and the salaries of the other members of the Desk so that the Full Employment Costs attributable to the Desk only are equal to 50% of the average monthly commission revenue generated by the Desk in that three month period, save that no such reduction shall take place during the first twenty-five (25) months of your employment.

(b) (i)  The Employer will pay you with respect to each bonus year of the Employer (as defined in sub-clause 3(c) below) a share of a deemed bonus pool (the "Bonus Pool"). The Bonus Pool shall equal 50% of Net Revenue less Full Employment Costs (as such terms are defined below).

   (ii)  Any share of the Bonus Pool shall be awarded and payable quarterly for each bonus year in accordance with the Employer's then policy (which policy may change from time to time in the sole discretion of the Employer) provided always that you remain employed by the Employer and are attending the workplace.

   (iii)  For the purposes of this sub-clause 3(b), determination of any share of the Bonus Pool and the payment, and amount (if any), will be made by you and final determination shall be made by the President of the Employer.

   (iv)  No payment under this clause in any bonus year shall be an indication of the level of a payment which may be made in the future (if any) and will at all times be subject to the Employer meeting its capital adequacy requirements.

(c)  Definitions and expressions used in this clause 3 are as follows:

      (i)    "Full Employment Costs" means all and any salary and contractual employment benefits and other employment remuneration payable to the Desk, market data costs and travel and entertainment costs of the Desk including but not limited to promotion accrual (to the extent that travel and entertainment costs exceed 3% of Net Revenue) during any relevant bonus year;

      (ii)    "Net Revenue" means the collected voice-broked commission revenue (as determined by the Company in accordance with then current practices and accounting policies), generated by the Desk during the relevant bonus year less communication costs, collection, third party execution costs and error account;

      (iii)    The bonus year for payments made under this Agreement is the twelve month period which shall run from 1 October to 30 September or such other dates as shall be determined by the Employer in accordance with its then current practices and accounting policies.

(d)    Notwithstanding any other provision of this Agreement, a proportion of any remuneration (up to a cap of 10%) awarded in any bonus year may, as determined in the sole and absolute discretion of the Employer, consist of (rather than cash) a contingent non-cash grant, subject to the terms of the grant document(s) under which such non-cash grant was awarded, including any vesting and cancellation provisions and restricted covenants contained therein.

(e)    The terms of this clause 3 are confidential and shall not be disclosed (without the Employer's prior consent) by you to any third party, save as required by law.

### 4.  Benefits

In addition to your monetary remuneration, you may be eligible to participate in the benefits schemes set out in paragraph 3 of the Terms & Conditions.

### 5.  Early Termination

(a)    You are referred to the additional provisions in the Terms & Conditions.

(b)    If you fail over any consecutive three month period to generate commission revenue equal to, or more than, two times your Salary over the same three month period the Employer reserves the right to terminate your employment on three months' written notice, save that such termination shall not take place during the first twenty-five (25) months of your employment.

### 6.  General

(a)    This Agreement shall be governed by and construed in accordance with English law. The parties hereby submit to the exclusive jurisdiction of the English courts as regards any claim or matter arising out of or in connection with this Agreement.

(b)    For the definition of Associated Company, please refer to paragraph 1 of the Terms & Conditions.

(c)    This Agreement constitutes a contract between you and the Employer save that it shall not be binding and enforceable unless or until executed by the representative of the Employer set out below.

(d)   In the event of a discrepancy between the terms set out in this Contract and the Terms & Conditions and/or any employee handbook in force from time to time (the "Employee Handbook"), the terms set out in this Contract shall prevail.

Please sign and return both of the enclosed copies of this Contract and the Terms & Conditions as confirmation that you have received and accepted these terms. One copy of each will be returned to you after signature of the Contract on behalf of the Employer and the other copy of each will be placed on your Personnel file.

**SIGNED** by                              )

**BGC BROKERS L.P.**                       )

acting by its general partner              )

**BGC BROKERS GP Limited**                 )

**SHAUN LYNN**
**PRESIDENT**

Signed by the employee          ........................... on 28.05.12.

**SIMON ANDRIESZ**          **DATE**

# TERMS AND CONDITIONS OF BGC BROKERS L.P.

1. **Employer**

1.1 Your employer is BGC Brokers L.P. (the "Employer"). Where your employment contract and these terms and conditions refer to "Associated Company" this means any Company, partnership or other entity controlled by, or controlling, or in common control with, the Employer or its parent. A person, Company, partnership or other entity shall be deemed to control another person, Company, partnership or other entity if the former person, Company, partnership or other entity possesses, directly or indirectly, the power to direct, or cause the direction of, the management and policies of the other person, Company, partnership or other entity whether through the ownership of voting securities or partnership interests, representation on its board of directors or similar governing body, by contract or otherwise.

1.2 Where you are seconded to an Associated Company or, whilst employed by the Employer, you in fact perform some or all of your services for an Associated Company, in your employment contract or in these terms and conditions references to the Employer shall be construed to refer to that Associated Company where appropriate.

2. **Your Obligations, Duties and Hours of Work**

2.1 You are required to well and faithfully serve the Employer and to use your best endeavours at all times to promote and develop its business and reputation and to act in the best interests of the Employer.

2.2 In view of your position and the nature of the Employer's business you will be expected and required to work outside the normal hours of work dependent upon market conditions and other factors inherent in the business. In accordance with Regulation 5 of the Working Time Regulations you agree that Regulation 4(1) of the Working Time Regulations shall not apply to your employment with the Employer. At any time during your employment you or the Employer may give three months' notice in writing that this paragraph shall cease to apply with effect from the expiry of the said three months' notice.

2.3 You must devote the whole of your working time to the business of the Employer. For this reason, during your employment, you are not permitted, without the written consent of the Employer, to have an interest in any other Company, business or enterprise (whether as an employee, contractor, partner, consultant, agent, shareholder or otherwise). You may, however, acquire or own, without disclosure, by way of investment only, less than 1% of the outstanding securities of any class of any corporation that is listed on a recognised stock exchange or traded in the over-the-counter market.

2.4 You agree to comply with such reasonable instructions as the Employer (or any Associated Company) may give from time to time including in relation to its discretion to allocate customers, to reimburse or set limits on expenses and to require you to comply with rules and procedures affecting your employment which the Employer may from time to time lawfully and properly introduce, including the provision of the Employee Handbook. The Employer will give you four weeks' notice of any new rules or procedures affecting you and give due consideration to any representations made by you.

2.5 You agree to comply with any substance misuse policies of any Exchange or financial services regulator of which the Employer is a member.

2.6  You must maintain the highest standards of honesty and fair dealing in your work for the Employer. Great importance is attached to the observance of the Company's policies and procedures, particularly the Compliance Manual, and the common law, regulations or codes or principles made pursuant to all applicable laws and regulations including without limitation the Financial Services and Markets Act 2000 or any of the Self Regulating Organisations (SROs) and The Financial Services Authority. You acknowledge that any serious or substantial breach of any of these obligations will be regarded as gross misconduct and is likely to result in your summary dismissal.

2.7  In order to retain and enhance the Employer's standing and integrity at the forefront of the business community in the United Kingdom and internationally, your conduct in dealings with members of the public and customers of the Employer must be totally professional.

2.8  You confirm that you have not withheld any material information or been guilty of any misrepresentation which, if disclosed to the company, would have been taken into account in deciding whether to enter into this Agreement, and, if so, on what terms.

2.9  You are required to have and maintain a high level of product and market knowledge so that you are capable of providing a professional and profitable service to the Employer's clients. You must use reasonable endeavours to: (i) create liquidity by obtaining dealing prices and interest from clients; (ii) raise the profile of the Employer (including increasing the Employer's client base); and (iii) improve relationships with the Employer's existing clients, including entertaining and making personal contact with existing and potential new customers (within the guidelines set down by the Employer from time to time) in order to fulfil your duties.

2.10 You acknowledge that the Employer expects you to generate commission income of not less than two to three times your salary or fixed draw (as amended from time to time) and that the Employer carries out monitoring of your performance by reference to that standard.

2.11 All broking desk telephone lines may be voice recorded by the Employer. You agree that you will, wherever practicable, conduct business transactions with counter parties or customers on these telephone lines.

3. **Benefits**

You will be notified separately of your eligibility for benefits such as health insurance and permanent health insurance. Your eligibility for such schemes is subject to the terms and rules of the scheme prevailing from time to time. In particular (but without limitation) you must provide your full co-operation in connection with any claim made on your behalf under such a scheme(s) and you are at all times responsible for providing any medical evidence that may be required by the insurers. Should the insurers refuse your claim, the Employer will be under no further obligation to pay any remuneration or provide other benefit to you and you expressly waive any express or implied term to the contrary. The Employer reserves the right to vary, and/or replace any health insurance and/or permanent health insurance scheme(s) from time to time at its absolute discretion (provided in each case that the level of benefit provided to you (or, as the case may be, your spouse and dependent children) shall at no time be reduced by such variation or replacement).

4.  **Pension**

    Save as required by law in connection with a stakeholder pension, there is no company pension. Accordingly, there is no contracting-out certificate in force in relation to your employment and unless you make private pension arrangements, you must contribute to the State Earnings Related Pension Scheme.

5.  **Expenses and Deductions**

5.1 You will be entitled to the reimbursement of all reasonable expenses incurred in the proper performance of your duties in compliance with the Employer's policies and practices provided that you complete the Employer's expenses claim form to its reasonable satisfaction and submit satisfactory supporting evidence. The Employer reserves in its sole discretion the right not to reimburse expenses incurred within 30 days of your giving notice, or purported notice, to resign or terminate your employment.

5.2 If at any time during your employment you have undisputed liabilities to the Employer, or any Associated Company, whether under your employment contract or otherwise, either actual or contingent (where there is an undisputed likelihood that a future liability will occur), including but not limited to loans, advances, relocation expenses or excess holiday payments, it is specifically agreed that the Employer may deduct the sum or sums in respect of such undisputed liabilities from time to time owed to it from any payment otherwise due to you from the Employer howsoever arising including your final pay. If a likely future liability does not occur any money deducted on account thereof shall be released as soon as reasonably practicable. You and the Employer agree to use your reasonable endeavours to resolve any dispute in relation to any liability or alleged liability expeditiously.

5.3 The Employer may reduce or make deductions from your remuneration with respect to unauthorised non-attendance at work for all or part of any working day. Where you fail to be present for work for two or more days without authorization or good reason, you may be subject to disciplinary action, including (in extreme or persistent cases) dismissal.

5.4 The Employer will deduct from your salary or other payments due to you such sums as shall be necessary to satisfy income tax or national insurance contributions arising out of your employment.

6.  **Holiday Leave**

6.1 Save as otherwise agreed with the Employer, you are entitled, in addition to bank and statutory holidays (which the Employer recognises), to 25 working days paid holiday in each complete holiday year. The holiday year runs from 1 January to 31 December. Holiday must be taken at times agreed with the person designated by the Employer for this purpose and may not be carried forward from one calendar year to the next without the Employer's written consent (not to be unreasonably withheld).

6.2 You agree that the Employer may require you to work on all or any bank and/or public holidays in order to fulfil the requirements of your position. If your employment commences or terminates part way through the holiday year, your entitlement to holiday during that year will be assessed on a pro rata basis and for the purposes of this clause holiday accrues at the rate of 1.66 days per month.

6.3 The Employer reserves the right during any period of notice of termination of your employment, or during any period in which the Employer does not require you to

perform your duties during your employment, to require you to take any accrued holiday leave.

6.4 Upon termination of your employment, you will not be entitled to be paid in lieu of holiday leave accrued to you but untaken in excess of your entitlement to annual leave under the Working Time Regulations, namely 2.33 days per month. For the purposes of this paragraph, any payment in lieu will be at the rate of $1/260^{th}$s of your annual fixed draw per day. In any holiday year, the Employer may deduct any holiday leave taken in excess of your entitlement accruing from your salary at the rate of $1/260^{th}$s per day by which your entitlement is exceeded.

## 7. Sickness

7.1 If you are ill and unable to come to work you must ensure that your Departmental Manager (or his designate) is informed of your absence at the earliest opportunity, and in any event no later than three hours after your regular start time. You must advise your manager how you may be contacted while you are not in the office. If you cannot call, you must arrange for someone else to do this. Failure to notify the Employer of any absence, without good reason, will be treated as unauthorised absence and may lead to disciplinary action, including dismissal, and/or deductions being made from or non payment of your remuneration. You are responsible for ensuring that the Employer is kept fully informed on a day to day basis about your condition and in particular your likely date of return to work.

7.2 You will be entitled to statutory sick pay provided you comply with the Employer's notification procedures. (Details of your entitlement in accordance with the relevant legislation can be obtained from the Human Resources Officer). Subject to the Employer's policy from time to time, the Employer will pay you your salary for up to a maximum aggregate period of 20 working days in any period of 12 months. Thereafter any additional payment during sickness absence shall be at the absolute discretion of the Employer.

7.3 If you are absent from work for more than three consecutive working days, you may be required to provide a medical certificate from your doctor to Human Resources. Failure to comply with your obligations under this clause may result in disciplinary action, including dismissal, or deductions from or non-payment of your remuneration. If you are absent from work for a period in excess of one month and you then notify the Employer that you are fit to return to work, you agree that the Employer may postpone your return until it has received a certificate from a medical advisor nominated by the Employer pursuant to paragraph 7.4 below which confirms that you are fit to return to work. If you are absent from work for more than three consecutive working days, you shall not be entitled to receive any payment from the Employer (other than statutory sick pay and salary in line with 7.2 above if appropriate) after the fourth working day of sickness absence prior to receipt of such certificate by the Employer.

7.4 The Employer may require you to undergo examinations (including where appropriate, blood and other tests) by a medical adviser appointed or approved by but otherwise independent of the Employer. You agree that the medical adviser may disclose to the Employer the results of the examination and discuss with the Employer his or her opinion of your ability to properly discharge your duties.

## 8. Approaches by Competitors

8.1 If at any time you are invited or approached to take up employment with, or to enter into a business relationship with, a competitor of the Employer (or any Associated Company)

you will disclose that fact and the names of the parties involved as soon as practicable in writing to your Departmental Manager.

8.2 If at any time you decide to accept an offer of employment or to enter into a business relationship with a competitor of the Employer (or any Associated Company) before accepting such an offer you must:

8.2.1 provide the competitor with a copy of your employment contract and these terms and conditions, omitting or obscuring the salary; and

8.2.2 give notice of that fact as soon as reasonably practicable in writing to the person designated by the Employer for this purpose.

8.3 In order to protect and maintain a stable workforce, the Employer requires that if at any time you become aware that another employee of the Employer (or any Associated Company) has been invited or approached to take up employment with, or to enter into a business relationship with, a competitor of the Employer (or any Associated Company) you must inform your Departmental Manager of this fact and the names of the parties involved as soon as reasonably practicable.

## 9. Suspension and Garden Leave

9.1 In circumstances where the Employer considers it reasonable (including but not limited to, investigating any disciplinary matter against you) it reserves the right at its sole discretion, to require you to remain at home on paid leave for a period of no more than three months in aggregate or to assign to you such other duties consistent with your abilities and seniority in addition to or instead of your duties herein ("Suspension").

9.2 During any period after you or the Employer has given notice to terminate your employment or notice not to renew your contract or if you should otherwise seek to leave your employment with the Employer, then the Employer will at its discretion be under no obligation to assign any duties to you or to provide any work for you, may transfer you to a different product area and/or will be entitled to exclude you from its premises ("Garden Leave"). This will not affect your entitlement to receive your Salary or any share of the Bonus Pool.

9.3 During any period of Suspension or Garden Leave, you agree that:

9.3.1 save for routine social contact, you will not contact employees or clients of the Employer with whom you have previously dealt while employed by the Employer; and

9.3.2 if requested to do so, you must return immediately to the Employer any Employer property, any Associated Company's property and any property of its or their clients in accordance with paragraph 10 below.

## 10. Termination of Employment

10.1 Notwithstanding anything to the contrary in your employment contract and these terms and conditions, the Employer may dismiss you summarily (i.e. without notice) in circumstances where it is entitled to do so at common law, including, but not limited to, substantial breach of any terms of the employment contract and these terms and conditions or the Employer's policies and procedures, wilful refusal or neglect to carry out instructions or duties, dishonesty or other instances of serious misconduct or serious

Case 1:24-cv-07004-LJL    Document 27-14    Filed 12/06/24    Page 12 of 18

10

incompetence. You are advised to refer to the Employee Handbook for a non-exhaustive list of the examples which are normally regarded as gross misconduct.

10.2  Upon the termination of your employment (and during any period of suspension or garden leave in accordance with paragraph 9 above), you must return immediately to the Employer any of the Employer's property, any Associated Company's property and any property of the Employer's or any Associated Company's clients, including but not limited to all keys, documents, lists, papers, business cards, credit cards, security and computer passes, mobile telephones, records and computer disks or any other media on which information is held relating to the business of the Employer or any Associated Company or their clients together with any copies thereof.

10.3  In the event that you are not, in the opinion of the Employer, physically or mentally fit to perform your duties your employment may be terminated upon two months' notice in writing. Before taking such action the Employer will consult with you and will obtain an independent medical opinion. Without prejudice to the foregoing, if you cannot work or perform your duties because you are ill or injured for six consecutive months in any period of 12 months, the Employer may terminate your employment on two months' notice.

## 11. Grievance, Dismissal and Disciplinary Procedure

11.1  Where any grievance and disciplinary procedure implemented by the Employer from time to time exceeds statutory obligations, the procedure is not binding upon the Employer and does not form part of your terms and conditions.

11.2  The Employer's current dismissal and disciplinary procedures are set out in the Employee Handbook. If the Employer determines that you have committed a disciplinary offence, it reserves the right to impose a penalty upon you commensurate with the disciplinary offence committed. If you are dissatisfied with a disciplinary decision to dismiss you, in accordance with the Employer's current dismissal and disciplinary procedures, you should apply in writing to the Head of the Human Resources Department.

11.3  If you have a grievance you should write to your line manager (copied to the Head of the Human Resources Department) in the first instance if you are unable to resolve it informally. If the grievance remains unresolved or if it is not appropriate to resolve it with your line manager, you should apply in writing to the Head of the Human Resources Department, who will allocate an appropriate person to deal with it. Further details of the process are set out in the grievance procedure which is in the Employee Handbook.

## 12. Liquidated Damages

12.1  Where you fail to join the Employer in accordance with the terms of your employment contract (other than because of your death or because of termination of your employment by the Employer, except where such termination is as a result of your gross misconduct) (each an "Event"), then you accept and agree that, subject to paragraph 12.2, the following will constitute a genuine pre-estimate of the losses that the Employer will suffer arising from your failure to join (the "Liquidated Damages"):

 12.1.1  where an Event occurs when there are 18 months or more to run on the term of your employment contract, a sum equal to 25% of the Monthly Gross Revenue (as defined below) multiplied by 18; or

      12.1.2  where an Event occurs when there are less than 18 months but more than 4 months to run on the term of your employment contract, 30% of the Monthly Gross Revenue multiplied by the number of whole months remaining of the term; or

      12.1.3  where an Event occurs when there are four months or less to run on the term of your employment contract, 10% of the Monthly Gross Revenue multiplied by the number of whole months remaining in the term.

12.2  Where the Event is that you fail to commence working for the Employer you acknowledge that the Monthly Gross Revenues are calculated on the average revenues of the Desk prior to your joining and that you are intended to increase those average revenues. Accordingly, the percentages at paragraph 12.1.1 and 12.1.2 shall be increased to 45% and 40% respectively.

12.3  You acknowledge that the Liquidated Damages are not a penalty and are a genuine pre-estimate of the likely losses to be suffered by the Employer where an Event occurs.

12.4  For the purposes of paragraph 12:

      12.4.1  "Gross Revenue" means the amount of gross revenue generated during the Calculation Period:

            12.4.1.1  personally by you; or

            12.4.1.2  where you have not worked for the Employer throughout a whole Calculation Period or where you have failed to join the Employer in accordance with the terms of your employment contract or these terms and conditions, or where revenues are not allocated to you personally, the total amount of the gross revenue generated by the Desk (as defined in your employment contract) during the Calculation Period divided by the total number of brokers (who are not trainee brokers) on the Desk throughout the whole period of the Calculation Period.

      12.4.2  "Calculation Period" means:

            12.5.2.1  where you have commenced working with the Employer or an Associated Company, the six months ending at the end of the previous bonus year or six months thereafter, whichever is the most recent, provided that during the relevant six month period you were not absent for more than two weeks in aggregate for any reason (including, but not limited to, holiday, maternity/paternity leave, sick leave, garden leave or suspension). If you were so absent, the period of absence will not be part of the Calculation Period and the beginning of the Calculation Period will be automatically extended by a period equivalent to the period of absence;

            12.5.2.2  where you have failed to commence working, the six months ending at the end of the previous bonus year or six months thereafter, whichever is the most recent, prior to the Employer being notified of such failure or intended failure.

      12.5.3  "Monthly Gross Revenue" means the Gross Revenue divided by six.

**13. Undertaking and indemnity**

13.1   You represent, undertake and warrant that by the execution and/or the performance of your duties under your employment contract and these terms and conditions, you are not (and will not be) in default under, or in breach of, any agreement (including, but not limited to any agreement requiring you to preserve the confidentiality of any information which is the property of any third party) to which you are a party to or which you may be subject.

13.2   You agree that you will indemnify the Employer (or any Associated Company) in respect of any tax liability that the Employer (or any Associated Company) may incur to make any payment (including, without limitation, income tax or employee national insurance contributions) as a result of any failure on your part promptly and fully to account for and discharge any liability you may have to any third party. This indemnity will survive the termination of your employment with the Employer howsoever caused.

**14. Confidentiality and Non-derogatory Comments**

14.1   You shall not at any time during your employment nor after its termination directly or indirectly use, or copy or divulge Confidential Information to the detriment or prejudice of the Employer, any Associated Company, or any of its or their clients.

14.2   "Confidential Information" means information of a confidential or secret nature, trade secrets or commercially sensitive information relating to the business or financial affairs of the Employer or any Associated Company or any person (whether agents, customers, prospective customers or suppliers) having dealings with the Employer or any Associated Company. Confidential Information shall include: details and lists of individuals, customers or counterparties or other organisations with whom the Employer or any Associated Company transacted business during your employment (including their requirements, financial standing, the terms of business and any dealings with them), strategic business planning and financial information of the Employer or any Associated Company (including results and forecasts of any broking or trading desks, financial instrument transaction systems, details of employees and officers and their remuneration/benefits and the terms of their employment with the Employer or any Associated Company), any information concerning telecommunications systems and/or data processing/analysis, (including inventions, developments or improvements, designs, processes, software (including source codes)) or copyright works discovered or used by the Employer (or any Associated Company) or their employees and any information which you are told is confidential or which you are aware or ought reasonably be aware has been given to the Employer or any Associated Company in confidence by other persons. The foregoing list is not exhaustive.

14.3   You shall not be restrained from disclosing any Confidential Information which you are authorised to disclose in the proper performance of your duties by the Employer or which is or comes into the public domain (other than as a result of a breach of your obligations under your employment contract) or is ordered to be disclosed by a court of competent jurisdiction, a regulatory authority or otherwise required to be disclosed by law.

14.4   During your employment or at any time after its termination, you must not make, publish or otherwise communicate to third parties (both internally and externally) any disparaging or derogatory statements, whether in writing or otherwise, concerning the Employer, or any Associated Company, or any of their respective officers or employees and you acknowledge that acting in breach of this provision will harm the business of the Employer and/or any Associated Company and constitutes a serious breach of your

employment contract. Similarly, the Employer agrees not to make, publish or communicate (and not to authorise to be made, published or communicated) any disparaging or derogatory statements, whether in writing or otherwise, concerning you or the Desk (and agrees to use its reasonable endeavours to prevent any such statement by any of its or any Associated Company's officers or employees).

14.5 The covenants contained in this paragraph 14 shall survive the termination or expiration of your employment.

## 15. Protection of the Employer's Interests

15.1 Without the written prior consent of the Employer and whether alone or with others, directly or indirectly for your own benefit or the benefit of any person or organization you shall not, during the term of your employment, and for a period of twelve (12) months after its termination, offer to employ or enter into partnership, induce or attempt to induce any individual to whom this paragraph applies to leave the employment of or to discontinue the supply of his/her services to the Employer or any Associated Company without the Employer's prior written consent (whether or not such action would result in a breach of contract by such individual) nor shall you encourage counsel or procure that individual to do so. This paragraph shall apply to any individual who is an employee or who provides services to the Employer or any Associated Company and whom you have managed or with whom you have or have had material and/or regular dealings in the course of your employment during the twelve 12 months prior to the termination of your employment and who is employed by or has provided services to the Employer (or an Associated Company) in a senior or managerial capacity or in any technical, IT, sales or broking, marketing, business development role, provided this restriction shall not apply to non-management (clerical, administrative or manual) staff.

15.2 Without the written prior consent of the Employer and whether alone or with others, directly or indirectly for your own benefit or the benefit of any person or organization you shall not during your employment and for a period of six (6) after its termination:

15.2.1 solicit or entice away any client or counterparty of the Desk (or any desk to which you are moved in accordance with your employment contract or these terms and conditions) of the Employer or any Associated Company (whether a Company or an individual) with which or whom you have had material and/or regular dealings in the course of your duties or, where this provision would apply after your employment ends, any time during the twelve (12) months prior to its termination;

15.2.2 in competition with the Restricted Business, seek to procure orders from, deal or carry on business with, or transact business with, any client or counterparty of the Desk (or any desk to which you are moved in accordance with your employment contract or these terms and conditions) of the Employer or any Associated Company (whether a Company or an individual) with which or whom you have had material and/or regular dealings in the course of your duties or, where this provision would apply after your employment ends, any time during the twelve (12) months prior to its termination;

15.2.3 engage the services of, render services to or become interested in (as owner, stockholder, partner, lender or other investor, director, officer, employee, consultant or otherwise) any business activity that is in competition with the Restricted Business;

15.3 "Restricted Business" shall mean the business or any part of the business and which in either or both case(s):

- 15.3.1 is carried on by the Employer or any Associated Company at the date of termination of your employment;

- 15.3.2 was carried on by the Employer or any Associated Company at any time during your employment or, where the relevant provision would apply after your employment ends, any time during the twelve months immediately preceding the date of its termination; or

- 15.3.3 is to your knowledge to be carried on by the Employer or any Associated Company at any time during the twelve (12) months immediately following the date of termination of your employment

and which you were materially concerned with/worked for or had management responsibility for (or had substantial confidential information regarding) in either case at any time during your employment or, where the relevant provision would apply after your employment ends, any time during the period of twelve (12) months immediately prior to the date of its termination.

15.4 You acknowledge that:

- 15.4.1 the restrictions set out above are reasonable and necessary for the protection of the legitimate interests of the Employer and/or any Associated Company and that, having regard to those interests, these restrictions do not work unreasonably on you;

- 15.4.2 the restrictions shall apply in relation to all clients and counterparties in respect of whom they are expressed to apply notwithstanding that such clients and counterparties may have been introduced to the Employer or any Associated Company by you (or any person under your control) before or during your (or his/her) employment with the Employer or any Associated Company;

- 15.4.3 any and all of your relationships from time to time with clients of the Employer and/or any Associated Company are the property of the Employer and/or its Associated Company.

15.5 If the Employer transfers all or part of its business to an Associated Company or to a third party (in either case, a "Transferee") the restrictions contained in this paragraph 15 shall, with effect from the date of your becoming an employee of the Transferee, apply to you as if references to the Employer included the Transferee and references to any Associated Company are construed accordingly and as if references to customers or clients or counterparties or suppliers or employees are of the Employer and/or Transferee and their respective Associated Companies.

15.6 The obligations imposed on you by paragraph 15 extend to you not only on your own account but also if you act on behalf of any other Company, entity or other person and shall apply whether you act directly or indirectly.

15.7 The restrictions entered into by you in this paragraph 15 are given to the Employer for itself and as trustee for each and any Associated Company. In accordance with the Contracts (Rights of Third Parties) Act 1999, any Associated Company may rely upon and enforce the terms of this paragraph 15 against you.

### 16. Inventions and Intellectual Property

16.1 You must disclose to the Employer any invention, or improvement, design, process, information, copyright work, trade mark or trade name or get-up made, created or discovered by you during the continuance of your employment (whether patentable or not and whether or not patent protection has been applied for or granted or registered) which concerns or is applicable to products or services provided by or relating to the business of the Employer or any Associated Company or capable of being used or adapted for use therein or in connection therewith ("Intellectual Property") made or discovered in the course of your employment and shall belong to and be the absolute property of the Employer or any such Associated Company as the Employer may direct (to the extent permitted by law).

16.2 To the extent that such Intellectual Property has not vested or does not vest in the Employer by operation of law, you hereby irrevocably assign to the Employer, including by way of future assignment, with full title guarantee, absolutely and free from all encumbrances, all your rights, title and interest in any and all intellectual property rights, in, or relating to the Intellectual Property together with all accrued rights of action in respect of any infringement of any such intellectual property rights.

16.3 You shall at all times whether during your employment or after its termination:

   16.3.1 supply all such information and give such assistance as is necessary in the opinion of the Employer (or any Associated Company) to enable it or them to exploit the Intellectual Property to the best advantage; and

   16.3.2 execute all such documents and take all such steps required for vesting the Intellectual Property rights in the Employer or any such Associated Company or in such other person as the Employer may specify.

### 17. Data Protection and Monitoring

17.1 You consent to the Employer or any Associated Company holding and processing both electronically and manually, the data (including personal sensitive data and information contained in e-mail and e-mail attachments) it collects, stores and/or processes, which relates to you for the purposes of the administration and management of its business. You also agree to the Employer or any Associated Company forwarding this data to other offices it may have which may be outside the European Economic Area for storage, processing, or administrative purposes and you consent to the Employer or any Associated Company disclosing your personal data (including sensitive personal data) to third parties where such disclosure is for the legitimate business purposes of the Employer or any Associated Company or is necessary for administrative (including but not limited to data processing) personnel, management, legal and/or regulatory purposes.

17.2 To ensure regulatory compliance and for the protection of its workers, clients/customers and business, the Employer reserves the right to use surveillance equipment and to monitor, intercept, review and access your telephone log, internet usage, voicemail, e-mail and other communication facilities provided by the Employer which you may use during your employment. The Employer will use this right of access reasonably but it is important that you are aware that all communications and activities on our equipment or premises cannot be presumed to be private.

17.3 The Employer does not permit employees to covertly tape or record electronically by any means any individual with whom they interact in the course of their duties. Any employee who does so (without the Employer's authority) in breach of this clause will be subject to disciplinary action and the Employer will regard their actions as gross misconduct.

16

## 18. Entire Agreement

18.1 These terms and conditions together with the employment contract represent the entire agreement between the parties with respect to your employment. Definitions used in the employment contract shall have the same meaning as in these terms and conditions, and vice versa. Each party confirms that it has not relied upon any information, representations or warranties not expressly contained herein.

18.2 The employment contract and these terms and conditions may not be amended, supplemented or modified except by written agreement executed by you and the Employer.

18.3 No provision of the employment contract and these terms and conditions will be waived or deemed to be waived, unless such waiver is in writing signed by the waiving party. No such waiver shall be a waiver, or deemed to be a waiver, of any other or further obligation or liability of the party or parties in whose favour the waiver was given.

18.4 You agree that the Employer may assign this contract to a creditworthy Associated Company in whole or in part and that if the Employer shall choose to do so, you shall have no claim against the Employer in connection with such assignment.

_____          28.05.12
**SIMON ANDRIESZ**                          **DATE**

CONFIDENTIAL                                                              BGC00000325